**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA ACEVES,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 1:14-cv-01907-SMS<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |

Plaintiff Linda Aceves seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DI") under Title II and for supplemental security income ("SSI") under Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) ("the Act"). The matter is before the Court on the parties' cross-briefs, which were submitted without oral argument. After a review of the record and applicable law, the Court affirms the decision of the Administrative Law Judge ("ALJ").

I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND[1]

A. *Procedural History*

Plaintiff applied for DI on and for SSI on April 7, 2011.[2] AR 95-96. She alleged disability beginning on May 3, 2006. AR 249, 256. The Commissioner denied the claims on August 23, 2011,

---

[1] The relevant facts herein are taken from the Administrative Record ("AR").
[2] Plaintiff previously applied for DI and SSI in 2006. In a written decision dated July 8, 2008, ALJ Patricia Leary Flierl found Plaintiff not disabled under the Act. AR 102-114.

1

and upon reconsideration, on February 8, 2012. AR 121, 131, 142, 150. Plaintiff then filed a timely request for a hearing. AR 176.

Plaintiff appeared and testified before an ALJ, Sharon Madsen, on March 12, 2013. Also at the hearing were Plaintiff's counsel and an impartial vocational expert ("VE"). AR 28. In a written decision dated April 3, 2013, the ALJ found Plaintiff was not disabled under the Act. AR 22. On September 30, 2014, the Appeals Council denied review of the ALJ's decision, which thus became the Commissioner's final decision, and from which Plaintiff filed a timely complaint. AR1; Doc. 1.

B. *Factual Background*

The Court will not recount in detail all the facts of this case, discussing only what is raised on appeal and relevant for purposes of this order.

Concurrent with her application for DI and SSI, Plaintiff filed a disability report wherein she claimed that major depression, schizoaffective disorder, degenerative joint disease, and high blood pressure limited her ability to work. AR 301. In her Adult Function Report, completed on April 17, 2011, Plaintiff described her daily activities to include watching television, reading, washing the dishes, preparing sandwiches and frozen dinners, and talking on the phone. AR 329-333. About a year later, in a second disability report, Plaintiff reported feeling tired, lacking energy, and taking a long time to complete her daily activities, requiring rest in between tasks. AR 351.

1. Medical evidence

Records showed Plaintiff receiving medical treatment from numerous medical groups such as Fresno Behavioral Health, Valley Health Resources, Community Regional Medical, and Community Medical Centers.

Among the records from Fresno Behavioral Health were reports from:

- Licensed Social Worker ("LCSW") Lupe Parraz, who completed an assessment of Plaintiff on September 10, 2009, and recounted her report of being taken in under California Welfare and Institutions Code section 5150[3] in 2000 and 2007 for running a

---

[3] Section 5150 states, in relevant part:

   red light while under the influence of PCP and alcohol, and for hurting herself, respectively;

- Dr. Daniel Brooks, who diagnosed Plaintiff with schizoaffective disorder on February 17, 2011;

- Nurse Practitioner ("NP") Cecilia Salazar, whose 2011 and 2012 progress notes (check-the-box forms) showed a primary diagnosis of schizoaffective disorder and other diagnoses such as borderline personality disorder, hypertension, degenerative disc disease, morbid obesity, sleep apnea, major depressive disorder, and diabetes. Generally, the 2011 notes indicated Plaintiff's schizoaffective disorder was unstable and remained so into early 2012. But the disorder improved and became stable in April 2012 onward; although her borderline personality disorder was unstable. And throughout Plaintiff received a Global Assessment Functioning ("GAF")[4] score of 55;

- Dr. Evelyn Aquino-Caro, who diagnosed Plaintiff with schizoaffective depression and obesity.

AR 401, 392, 487-502, 562-578, 429-430, 434-435, 437-438.

Dr. Steven Stoltz of Valley Health Resources completed an internal medicine evaluation of Plaintiff on July 30, 2011, at the request of the Department of Social Services ("DSS"). Dr. Stoltz made the following diagnostic impressions: morbid obesity, back pain, psychiatric, hypertension, borderline diabetes mellitus, and possible obstructive sleep apnea. He opined that Plaintiff could lift and carry ten pounds occasionally, walk for sixty minutes without interruption and do so three to four hours in an eight-hour workday, had no hand or feet and environmental limitations, and no

---

> When any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, member of the attending staff . . . of an evaluation facility designated by the county, designated members of a mobile crisis team provided by Section 5651.7, or other professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Mental Health as a facility for 72-hour treatment and evaluation.

Cal. Welf. & Inst. Code § 5150 (2011).

[4] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Garrison v. Colvin*, 759 F.3d 995, 1003 n.4 (9th Cir. 2014) (quotations and citation omitted). A "score between 51 to 60 describes moderate symptoms or any moderate difficulty in social, occupational, or school functioning." *Id*. (internal quotations omitted).

3

hearing or vision impairments. Plaintiff could sit or stand without restriction, but postural activities could be done on an occasional basis only. AR 451-456. Another Valley Health Resources physician, Dr. Ekram Michiel completed a psychiatric evaluation of Plaintiff at the request of DSS. Dr. Michiel gave Plaintiff a GAF score of 55-60 and opined that she could maintain attention and concentration to carry out simple job instructions, relate and interact with coworkers, supervisors, and the public, and carry out a wide variety of technical and/or complex instructions. AR 382-383..

On August 2, 2011, Dr. James P. Murphy also completed a psychiatric evaluation of Plaintiff at the request of DSS. Dr. Murphy gave Plaintiff a GAF score of 60 and concluded that Plaintiff was "not capable of performing Simple Repetitive Tasks (SRT) on a regular basis." AR 462.

Also on August 2, 2011, Dr. Aquino-Caro completed a Residual Functional Capacity ("RFC") assessment and psychiatric review of Plaintiff. She concluded Plaintiff had the ability to complete simple tasks, could sustain concentration two hours at a time, relate, and adapt. Plaintiff suffered from depression and her functional limitations were mild. AR 466-477.

Another physician who completed an RFC assessment was Dr. L. Guyer, a medical consultative examiner. After reviewing various medical records in Plaintiff's file, Dr. Guyer concluded the evidence supports finding Plaintiff capable of light work with the exception of using her left wrist forcefully. He diagnosed Plaintiff with degenerative joint disease, high blood pressure, and major depression. He opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, sit, stand and/or walk for six hours in an eight-hour workday, and was limited in her upper extremities with pushing and/or pulling. She had some postural, manipulative and environmental limitations, but no visual and communication limitations. Overall, he recommended adopting the prior ALJ decision.[5] AR 480-485.

On February 6, 2012, Dr. W. Jackson, a medical consultant, reviewed Plaintiff's medical

---

[5] In the prior ALJ decision, Judge Flierl found Plaintiff had the RFC to perform light work, but must avoid forceful pushing/pulling, lifting, and twisting with the left wrist. She was limited to simple repetitive tasks with no public contact. AR 111.

4

record, and recommended a medium RFC with limitations in stooping due to back pain and obesity. Dr. Jackson also completed an RFC assessment of Plaintiff and diagnosed her with lumbar strain and morbid obesity. Unlike Dr. Guyer, Dr. Jackson opined that Plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, sit, stand and/or walk for six hours in an eight-hour workday, and had no limitations with pushing and/or pulling. She had some postural limitations due to back pain and obesity, but no manipulative, visual, environmental, and communication limitations. AR 541-546.

On May 1, 2012, Dr. Surinder P. Dhillon of Community Regional Medical Center examined Plaintiff after she was admitted under section 5150 for overdosing on pills. Plaintiff reported a history of attempted suicide as a teenager. Dr. Dhillon advised Plaintiff to go on a diet and recommended stomach bypass if she could not lose weight. AR 548-549.

Records from clinics and offices associated with Community Medical Centers showed Plaintiff receiving sporadic treatment for various issues such as respiratory apnea, hypertension, diabetes, low back pain, and flu, from 2009 to 2012. Among them were progress notes from Dr. Thandar Lwin, who observed Plaintiff had a body mass index of 65.39 kg/m2 and assessed her with chronic low blood pressure, borderline diabetes mellitus, and hypertension. AR 439-447, 508-538.

2. Plaintiff's testimony before the ALJ

Appearing before the ALJ, Plaintiff stated she was born on October 13, 1971, was "about 5'1" or 5'2" tall and weighed "about 337 pounds." She lived with her aunt and did not have a driver's license. She could manger her personal care without assistance, but did not do household chores. A typical day consisted of getting up, going for a half-a-block walk, taking medications, and frequent naps. She discussed her diabetes and high blood pressure, both of which she controlled with medications. She also had sleep apnea and used a continuous positive airway pressure mask. AR 31-36.

Plaintiff experienced constant back pain and could only stand for five minutes at a time and

would need to lie down. At times the pain radiated to her shoulders. Her pain medications were more sleep-inducing than helpful. She struggled with climbing stairs and could sit for no more than ten to fifteen minutes before needing to stand up. She could lift and carry five to ten pounds, but had trouble with putting on shoes and socks or bending over to pick up objects. She also had left hand carpal tunnel syndrome which caused her daily pain. AR 35-37, 44.

Concerning mental health, Plaintiff testified to hearing voices and having suicidal thoughts when she feels depressed, which occurred about three to four times out of the week, and for which she was on medications. These episodes of depression would occur on consecutive days and last the entire day, making Plaintiff nonfunctional for about six hours. The depression caused Plaintiff to eat more and go for days without showering. She had a hard time being around people. AR 37-41.

Plaintiff recalled being admitted to the hospital in 2012 under California Welfare and Institutions Code section 5150 for feelings suicidal. She continued to have suicidal thoughts and informed her physician of them. AR 42-43. She could focus for no more than thirty minutes before needing a half-hour break. AR 43. Since her last hearing before an ALJ in 2008, her back pain and depression had gotten worse. AR 44-45.

3. <u>Vocational expert testimony before the ALJ</u>

Judith Najarian, the VE, gave testimony regarding Plaintiff's work history, which included employment as a cook helper, packager, and checker. AR 48.

The ALJ posed a number of hypotheticals for the VE. First, the VE was to assume a person of the same age, education and work experience as Plaintiff. This person could: lift and carry fifty pounds occasionally and twenty-five pounds frequently; stand or walk six to eight hours with occasional stooping; and climb ladders, ropes and scaffolds with frequent stairs, crouching, crawling, kneeling, and simple routine tasks. When asked if such person could perform Plaintiff's past work, the VE stated such person could perform all three jobs of cook helper, packager, and checker. For the second hypothetical, the ALJ asked if the same person could still perform any of the past jobs if

she: could lift and carry twenty pounds occasionally and ten pounds frequently; could sit, stand or walk for six to eight hours with occasional stooping, crouching, crawling, climbing, and kneeling; could not climb ladders, ropes or scaffolds; and was limited to simple routine and occasional public contact.  The VE concluded no, but opined that such person could, however, perform other jobs in the economy such as fruit cutter, marker, and assembler.  AR 48-50.

For the third hypothetical, the ALJ expanded on the second hypothetical and asked whether such person could perform any job if she were left dominant, could perform simple and routine tasks with no public contact, but must avoid forceful lifting, pushing, pulling and twisting of the left upper extremity.  The VE opined such person could perform the job of a marker, mail sorter/clerk, and route clerk.  For the fourth hypothetical, the ALJ asked if the manipulative posturals under the second hypothetical were added to the third hypothetical, whether that would change the VE's answer to the third hypothetical.  The VA stated that the jobs which could be performed would remain the same.  For the fifth and final hypothetical, the ALJ added to the fourth hypothetical the fact that such person would need two to four thirty-minute breaks per day, and asked if such person could perform any job.  The VE replied no.  AR 50-51.

4.  ALJ's Decision

A claimant is disabled under Titled II and XVI if she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of no less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process which an ALJ must employ to evaluate an alleged disability.[6]

---

[6] The ALJ must determine: "(1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual

7

The ALJ here found that at step one, Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 3, 2006.  At step two, Plaintiff had the following severe impairments: morbid obesity, lumbar degenerative joint disease, thoracic degenerative joint disease, schizoaffective disorder, and borderline personality disorder.  At step three, Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ concluded that Plaintiff had the RFC to lift and/or carry twenty pounds occasionally and ten pounds frequently, sit for six to eight hours, and stand and/or walk six to eight hours in an eight-hour workday.  She was limited to performing simple, routine tasks with only occasional public contact, and could occasionally stoop, crouch, crawl, kneel, and climb, but not ladders, ropes or scaffolds.  At step four, the ALJ found Plaintiff incapable of performing past relevant work.  And at step five, the ALJ found there were jobs which existed in significant numbers in the national economy which Plaintiff could perform, namely fruit cutter, marker, and assembler.  Consequently, Plaintiff was found not disabled from May 3, 2006 through the date of the ALJ's decision.  AR 15-22.

## II.  DISCUSSION

A.  *Legal Standards*

This Court reviews the Commissioner's final decision to determine if the findings are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a

---

functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work."  *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (quotations, citations and footnote omitted); 20 C.F.R. §§ 404.1520; 416.920 (2011).  Residual functional capacity is "the most" a claimant "can still do despite [the claimant's] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a) (2011).  "The claimant carries the initial burden of proving a disability in steps one through four of the analysis.  However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 401 (1971)), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. "If the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the Commissioner. However, we must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation and quotations omitted). "If the evidence can support either outcome, the Commissioner's decision must be upheld." *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *see* 42 U.S.C. § 405(g) (2010). But even if supported by substantial evidence, a decision may be set aside for legal error. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Nevertheless, an ALJ's error is harmless "when it was clear from the record that [the] error was inconsequential to the ultimate nondisability determination." *Robbins v. Soc. Sec. Admin*. 466 F.3d 880, 885 (9th Cir. 2006).

  B. *Analysis*

Plaintiff avers the ALJ erred by: (1) substituting her own judgment for that of a medical opinion, (2) failing to provide adequate reasons for rejecting the opinions of examining and treating physicians, (3) failing to consider all of plaintiff's impairments in making the RFC determination, and (4) relying on the VE's testimony which was based on an incomplete hypothetical. Doc. 13, pp. 6-9. The Court addresses them in turn.

  1. <u>ALJ did not substitute her opinion for that of a medical opinion</u>

Plaintiff contends the ALJ erred at step four of the five-step sequential process by finding "the mental health treatment records suggest that the claimant's mental health issues are related to her personality." This finding, in Plaintiff's view, is reserved for a physician and ignores evidence

9

of her borderline personality disorder.  AR 17, Doc. 13, pg. 6.  The Commissioner states no error occurred because the ALJ correctly cited to records which noted that Plaintiff's mental limitations were, in fact, personality-related.  Moreover, Plaintiff has not shown how reference to her personality-related issues invalidates the RFC determination.  Doc. 14, pp. 6-8.

Plaintiff's contention is meritless.  Indeed, as the Commissioner correctly points out, the ALJ simply recounted what the record reflected.  The ALJ cited to NP Salazar's progress notes, which stated that Plaintiff "has mood changes which appear to be more of personality nature [*sic*] with uncontrollable irritability and self-destructive thoughts."  Further, the ALJ did not ignore evidence of borderline personality disorder as she explicitly stated that Plaintiff received "mental health treatment for . . . borderline personality disorder," which NP Salazar stated in her progress notes. AR17, 562-578.  And contrary to Plaintiff's assertion, it is the ALJ's job to consider and evaluate medical opinion evidence.  *See* 20 C.F.R. §§ 404.1527(b), 416.927(b) (2011) ("In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive.") *and* §§ 404.1527(d), 416.927(d) ("Regardless of its source, we will evaluate every medical opinion we receive.") (2011).  Consequently, no error occurred.

    2.   <u>ALJ did not ignore the opinions of treating and examining physicians</u>

Plaintiff makes the general contention that the ALJ did not provide specific, clear and convincing reasons for rejecting the opinions of treating and examining physicians.  Doc. 13, p 7. She cites to what the Commissioner characterizes as "snippets of evidence" in the record from NP Salazar, LCSW Parraz, Dr. Dhillon, and Dr. Murphy, and from which the Commissioner contends the ALJ adequately rejected.  Doc. 14, pp. 8-11.

As an initial matter, the Court agrees with the Commissioner's observation that Plaintiff

10

presents an argument scant of specificity and analysis.[7] *See Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 872 (9th Cir. 2001) *aff'd sub nom. Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003) ("We therefore cannot grant relief [on this] argument, because he has failed to develop the record and his argument sufficiently to render it capable of assessment by this court."). The Court will therefore address Plaintiff's contention only to the extent that she has provided some reference and citation to the record. *See Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our circuit has repeatedly admonished that we cannot manufacture arguments for an appellant and therefore we will not consider any claims that were not actually argued in appellant's opening brief. Rather, we review only issues which are argued specifically and distinctly in a party's opening brief.") (internal quotations and citations omitted).

First, stating that physicians consistently found her schizoaffective disorder unstable regardless of whether she was medicated, Plaintiff cites to NP Salazar's progress notes. Undermining Plaintiff's position, however, is that from April 2012 onward NP Salazar diagnosed the condition as stable, despite earlier diagnoses of instability. Moreover, it is unclear, absent any discussion from Plaintiff, how NP Salazar's diagnoses belied the ALJ's findings, which included schizoaffective disorder as one of the severe impairments.

Next, stating that she was twice hospitalized for failed suicide attempts, Plaintiff cites to LCSW Parraz's September 10, 2009, assessment report and Dr. Dhillon's May 1, 2012, examination report. In her report, LCSW Parraz noted "[s]uicide ideation" as part of Plaintiff's psychiatric history. And in his report, Dr. Dhillon noted Plaintiff "has had history of previous suicide [*sic*] when she was in her teens." AR 401, 548. But even assuming suicide ideation was part of Plaintiff's history, it is unclear how that fact undermined the ALJ's findings when neither LCSW Parraz nor Dr. Dhillon ultimately diagnosed Plaintiff with suicide ideation or gave an opinion thereof. *See* 20

---

[7] The Court recognizes that the lack of analysis and specificity in arguments has become recognizable in briefs submitted by counsel.

11

C.F.R. §§ 404.1527(a), 416.927(a) (2011) ("Medical opinions are statements . . . that reflect *judgments* about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.")

Plaintiff also cites to Dr. Murphy's August 2, 2011, psychiatric evaluation for the position that she could not perform simple, repetitive tasks or function in the workplace. But contrary to Plaintiff's assertion, the ALJ did not ignore Dr. Murphy's opinion. The ALJ considered and discussed the opinion, but gave it "limited weight." AR 17. Because the opinion was contradicted by Drs. Michiel, Aquino-Caro, and Guyer,[8] the ALJ was required to give specific and legitimate reasons. *See Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995) ("To reject an examining physician's opinion which is contradicted by another physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record."). And in this case the ALJ did just that. Specifically, the ALJ explained her concerns with Dr. Murphy's opinion: (1) the conclusion concerning Plaintiff's inability to perform simple tasks was "entirely inconsistent with [Plaintiff's] own reported daily activities" and (2) Dr. Murphy did not quantify the limitations outlined. AR 17. The first concern, while specific, is not legitimate because Plaintiff's reported daily activities as set forth in her Adult Function Report and testimony before the ALJ were not inconsistent with Dr. Murphy's conclusion. The second concern, however, was legitimate because, indeed, Dr. Murphy did not quantify Plaintiff's limitations. Despite opining that Plaintiff "does" and "would" have difficulty in certain areas, Dr. Murphy stated nothing of the degree or frequency of the difficulties. The ALJ thus provided a specific and legitimate reason for giving the opinion limited weight.

Finally, the ALJ's finding that Plaintiff received relatively good GAF scores and that her

---

[8] By recommending adoption of Judge Flierl's finding, Dr. Guyer necessarily adopted the finding that Plaintiff was limited to simple repetitive tasks.

mental status examinations were generally good, were substantially supported and not, as Plaintiff contends, inexplicable. Therefore, Plaintiff's contention that the ALJ did not provide specific, clear and convincing reasons for rejecting the opinions of treating and examining physicians is unavailing.

### 3. ALJ did not fail to consider Plaintiff's impairments

Plaintiff contends the ALJ failed to consider her impairments, namely the left wrist carpal tunnel syndrome and the effect of her morbid obesity, in making the RFC determination. Doc. 13, pg. 8. The Commissioner asserts Plaintiff does not explain how the alleged impairments contribute to her limitations, and that regardless, the ALJ properly considered them. Doc. 14, pp. 11-12.

Plaintiff's contention is, again, meritless. In making the RFC determination, the ALJ explicitly stated that Plaintiff "is morbidly obese at 357 pounds with a Body Mass Index over 65" and cited to the October 24, 2011 progress notes of Dr. Lwin. AR 523. The ALJ also stated that Plaintiff "testified she has carpal tunnel in her left hand, but there is no medical evidence of record of treatment or limitation." AR 19-20. The record thus belied Plaintiff's contention. Furthermore, Plaintiff did not show the impairments' severity or how they contributed to her functional limitation. *See* 20 C.F.R. §§ 404.1512(c), 416.912(c) (2011) (explaining that a claimant must provide medical evidence showing that she has an impairment and how severe it is, and how the impairment(s) affect her functioning during the alleged period of disability); *see also id.* at §§ 404.1509, 416.909 (2011) ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.") *and* 404.1521(a), 416.921(a) (2011) ("An impairment . . . is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").

### 4. The ALJ did not present an incomplete hypothetical to the VE

Finally, Plaintiff contends the ALJ's hypotheticals to the VE did not include all of the impairments such that reliance on the VE's answers was error. Doc. 13, pp. 8-9. But again she does not develop her argument by specifying which impairment(s) she contends were not included in the

13

hypotheticals. In contrast, the Commissioner contends no error occurred because the ALJ was required to include only limitations he found supported by substantial evidence in crafting his hypotheticals. Doc. 14, pp. 12-13.

> An ALJ must propound a hypothetical to a VE that is based on medical assumptions supported by substantial evidence in the record that reflects all the claimant's limitations. The hypothetical should be accurate, detailed, and supported by the medical record. It is, however, proper for an ALJ to limit a hypothetical to those *impairments that are supported by substantial evidence in the record*.

*Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) (internal quotations and citations omitted) (emphasis added). As outlined above, the ALJ posed five hypotheticals for the VE to consider. Collectively, the hypotheticals reflected the diagnoses and RFC findings of Drs. Guyer and Jackson, thereby showing the ALJ considered the limitations described. The hypotheticals also reflected the opinions of other sources. For example, the ALJ's:

- hypothesis about an individual who could perform simple and routine tasks with no public contact indicated consideration of NP Salazar's diagnoses of Plaintiff's schizoaffective and borderline personality disorders; and

- hypothesis about an individual who needed two to four thirty-minute breaks per day indicated consideration of Dr. Aquino-Caro's opinion that Plaintiff could sustain concentration in two hour increments.

To the extent that there were limitations from impairments which were not accounted for, Plaintiff has not specified them nor shown they were supported by substantial evidence in the record. *See id.*; *see also Hibbs*, 273 F.3d at 872 *and Indep. Towers of Washington*, 350 F.3d at 929. Plaintiff's contention that the ALJ erred is therefore unavailing.

///////////////////////////

///////////////////////

///////////////////

//////////////

///////////

## III.  CONCLUSION

Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner.  The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

Dated:   **March 30, 2016**                                **/s/ Sandra M. Snyder**
                                                                                UNITED STATES MAGISTRATE JUDGE